(No. 87-CC-1322–)

SUSAN RHEA DILBECK, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed February 6, 1990.*

FRITZSHALL, FRITZSHALL & GLEASON (STEVEN N. FRITZSHALL, of counsel), for Claimant.

NEIL F. HARTIGAN, Attorney General (DANIEL BRENNAN, Assistant Attorney General, of counsel), for Respondent.

RAUCCI, J.

This cause comes on to be heard on a complaint filed by Claimant, Susan Rhea Dilbeck, for breach of an oral contract with the Elgin Mental Health Center and the resultant loss of wages, benefits, and career fulfillment for the years 1983 to 1986, both inclusive, at $25,000 per year, totaling $100,000.

The Claimant was employed at the North Aurora Center commencing sometime in 1977, as a resident-living aide, her duties consisting of record write-ups, filing, making rounds, feeding and day-to-day care of mentally ill or mentally retarded patients. The center was previously privately owned and operated, and was accredited by the Respondent to so operate.

On or about December 15, 1979, the Center lost its accreditation due to not meeting State standards, resulting in its closing and the patients, of necessity, were transferred to two Respondent-operated facilities, namely Elgin State Mental Hospital and Tinley Park Hospital. Claimant alleges that, at the time of the transfer of the privately owned North Aurora Center patients to the Elgin State Hospital and Tinley Park facility, both State of Illinois operated facilities, Respondent offered her permanent employment at Elgin in a similar capacity as her employment at the Aurora Center. Russell Legg, personnel officer at the Elgin State Mental Health Center for four years, was called as Respondent's witness and testified that sometime late in 1979, when the Aurora facility was closed, he received word that its patients were being transferred to Elgin and "we were to pick up about 30 people on emergency appointments and that due to the emergency there would not be time to work in a Civil Service list; that we

could hire people on an emergency basis only." He further stated that their employee cards were to be marked with "H" indicating a termination date of 2/15/80, and that they were given the option to seek permanent employment by taking a civil service examination; they must, however, make a high enough grade to get on the "A" list, which list is resorted to when vacancies occur, "A," "B," "C," in rotation.

There appears to be nothing in the record to support Claimant's theory that she was employed at the Elgin facility on a permanent basis as a civil service employee without qualifying through the normal channels of sitting for the required civil service examination and personal interview and being placed on the "A" list, from which list permanent civil service employees are selected when vacancies occured.

Ms. Alice Dickens, co-worker with Claimant at North Aurora Center, and one of the many employees transferred, in response to the question "in order to be hired, you would have to successfully pass all civil service requirements to be employed; is that correct?", stated "Pass the test, yes." Claimant took the required civil service examination sometime in 1980, received a "B" and proceeded to repeat the test intermittently and did not receive an "A" until 1983, three years after her 1979 transfer of employment to the Elgin facility. Claimant testified that she was advised that it would be necessary to take such a written test. This being the case, Claimant's allegations that she was promised permanent employment at the Elgin facility by a Dr. Wolf, director at North Aurora Center, who was not a State employee and had no contractual authority to so bind the Respondent, had no force or effect on the issue as to whether the Respondent had entered into a contract of employ-

ment with Claimant on either a temporary or permanent basis.

Claimant further seeks to enforce an oral contract of employment, which by its nature, was continuous employment and exceeded one year. An examination of the record does not establish such a contract, but if such oral contract was created, it would be unenforceable under the Statute of Frauds. In response to the question posed to Claimant as to what circumstance or what indication or correspondence or notes did she receive indicating that she was being invited to become an employee at the Elgin State Hospital, she replied " * * * we took it by word of mouth."

The deputy facility director at the Elgin State Hospital testified that Claimant, having attained a grade of "B" when she took the examination in 1980, did not qualify for placement and that, at that time, there were sufficient applicants on the "A" list to meet the present vacancies.

There is no basis for contract of employment by the Respondent, inasmuch as there is no oral or written contract of employment in the case at bar. The civil service requirements for employment in certain types of employment, of which Claimant's class is included, govern in this instance and no supervisor or director has any authority to circumvent such requirements and bind the Respondent. Claimant did not attain the required grade "A" until three years after the date the alleged employment contract commenced.

Further, State employees can only bind the State to the extent that they have the lawful authority to so bind, under the agency theory, and no such authority existed in this instance. Claimant relies on the representations

that a Dr. Wolf, director of the terminated North Aurora Center, entered into an employment contract with Claimant and that constituted the basis of enforcing an employment contract with Respondent. This is without merit, since Dr. Wolf was neither an employee of the Respondent, nor could he bind Respondent in any type of employment contract, written or oral.

It is therefore ordered, adjudged and decreed that the claim is dismissed and forever barred.